UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                          :

PETERS GALLERY OF NEW YORK, INC,
d/b/a GERALD PETERS GALLERY          :    Index No. _____

                                            :

         Plaintiff,                      :

                                            :

           -against-                    :

                                            :    **COMPLAINT FOR**

SUCCESSORS-IN-INTEREST TO         :    **DECLARATORY RELIEF**
EBERSTADT & SONS a/k/a             :
EDWARD EBERSTADT & SONS,        :
THE ESTATE OF LINDLEY EBERSTADT,   :
THE ESTATE OF CHARLES EBERSTADT,  :
JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, ETC. :
                                            :

         Defendants.                  :

                                            :
-------------------------------------------------------------x

       Plaintiff Peters Gallery of New York, Inc., D/B/A Gerald Peters Gallery ("Plaintiff"

or the "Gallery") for its complaint, by its attorneys Rottenberg Lipman Rich, P.C., hereby alleges:

<u>NATURE OF THE ACTION</u>

       1.     This action concerns a belated assertion of title to *Flute Courtship*, a

painting by New Mexico painter Eanger Irving Couse ("the Painting") by purported heirs of

Lindley and Charles Eberstadt ("the Eberstadts").

       2.     The Painting had at one time been part of the collection of New York

partnership Eberstadt & Sons, owned by the Eberstadts.

       3.     This action arises out of a challenge to ownership of the Painting asserted

by as-of-yet unidentified natural persons and/or legal entities purporting to be the heirs of the

Eberstadts ("the Defendants").

4.     The issue raised is solely whether the Defendants' claims are barred by the passage of time under the doctrine of laches and the statute of limitations.

5.     The Gallery is prepared to have all factual and legal issues surrounding the claim to the Painting resolved by this Court.  It therefore brings this action for a declaration that: (a) the Defendants' claim is barred by the doctrine of laches due to the prejudice to the Gallery's defense of its title to the Painting arising from the Defendant's unreasonable delay in asserting these claims; (b) the Defendants' claim is barred by the applicable statute of limitations because demand was made for the return of the Painting fifty years ago and the Painting was not stolen; and (c) the Defendants are not proper claimants to ownership of the Painting and that, accordingly, their claim of ownership of the Painting is without merit.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between Plaintiff and Defendants and the matter in controversy exceeds $75,000, exclusive of interest and costs.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a) because a substantial part of the alleged events giving rise to the claim occurred in this district and (b) and (c), because Defendants are subject to personal jurisdiction here.

8.     This Court has jurisdiction to grant the requested relief pursuant to 28 U.S.C. §§ 2201(a) and 2202.

9.     This Court may exercise personal jurisdiction over the Defendants because (i) they have availed themselves of the protection of New York law claiming the Painting based on a tort allegedly committed in New York, and (ii) they have transacted business in New York in

relation to the Painting by demanding surrender of possession from Bonham's & Butterfields Auctioneers Corp. in New York ("Bonham's").

THE PARTIES

10.     Plaintiff is a nominal party and art gallery incorporated in and having its principal place of business in New York.  It also is the assignee-in-interest to the Paintings owned by the George A. Bjurman Living Trust in California (the "Trust") for the purpose of bringing this litigation.  Mr. Bjurman was a citizen of the State California upon his death on April 14, 2022.  The Trust is a citizen of State of California.

11.     Upon information and belief, Eberstadt & Sons was a New York legal entity dissolved in 1975.  The Defendants claim to be the successors-in-interest thereto.  Upon information and belief, the Defendants are citizens of the States of New York and New Jersey.

FACTS

12.     According to the Defendants' agents, Eberstadt & Sons owned a collection of artworks which included the Painting.

13.     Eberstadt & Sons entrusted a large group of artworks (as many as 77) from the collection to Shar-Sisto, Inc. ("Shar-Sisto") in New York in 1964.

14.     Shar-Sisto's business included framing, restoring, cleaning, re-lining and selling artworks.

15.     At some point in the 1960s or early 1970s, Eberstadt & Sons requested the return of all or some of the artworks entrusted to Shar-Sisto, including the Painting.

16.     Upon information and belief, Shar-Sisto either refused, or was unable, to return approximately seventeen of those artworks, among which was the Painting (together, the "Unreturned Artworks").

17.     According to Defendants' agent, the Unreturned Artworks were no longer in Shar-Sisto's possession and "had apparently been sold off."

18.     Upon information and belief, no one ever reported any of the Unreturned Artworks as having been stolen to any police department, the FBI or Interpol.

19.     Based upon information produced by Defendants' agent, someone affiliated with Eberhardt & Sons finally reported the Unreturned Artworks as missing to the Art Dealers Association of America ("ADAA") in 1974, ten years after Eberhardt & Sons entrusted them to Shar-Sisto.

20.     Upon information and belief, the ADAA circulated a typewritten notice to member galleries of the ADAA on November 6, 1974 listing artwork reported to it as missing.  The notice included an entry for "I.E. Couse *Indian Courtship*," which Defendants claim to be the Painting at issue in this case under a different title.

21.     Neither Plaintiff nor its sister entity in New Mexico which bought and sold the Painting (the "New Mexico Gallery") has ever been a member of ADAA.  Neither the New Mexico Gallery nor Mr. Bjurman saw a copy of the ADAA notice, which in any event had very limited dissemination in New York City and almost none outside major American cities.

22.     Upon information and belief, Defendants did not alert the New York based International Foundation for Art Research ("IFAR") of the alleged theft.  Starting in 1975, IFAR published reports of stolen artwork which were more widely read than the ADAA notices, but its reports did not include the Painting or any of the other Unreturned Artworks.

23.     Upon information and belief, in 1974, Charles Eberstadt died.

24.     In 1975, Eberstadt and Sons was dissolved.

25.     Upon information and belief, in 1984, the sole remaining ex-partner of Eberstadt and Sons, Lindley Eberstadt, died.

26.     In November 1993/December 1994, the New Mexico Gallery was the successful bidder at the Texas Art Gallery, a reputable Dallas auction house, of a work of art by Irving Couse there titled *The Flute Courtship*.  It paid $63,450 for the work.  Defendants allege that this work is the Painting.

27.     The Painting was one of thirty-nine paintings lent by Plaintiff in January 1995 to the Palm Springs Desert Museum for an exhibition entitled *Masters of the Taos Tradition, The Gerald Peters Collection*, which ran through April 1995.

28.     The Painting was one of a number of paintings loaned by the New Mexico Gallery to the National Wildlife Art Museum in Jackson Hole, Wyoming, for public exhibition from May 15, 1995, through November 15, 1995.

29.     Both of these exhibitions attracted large audiences and significant publicity.

30.     On or about November 7, 1996, the New Mexico Gallery sold the Painting to Mr. Andy Bjurman of Los Angeles, California.

31.     Mr. Burjman died on April 14, 2022.  Title to the Painting passed to the Trust on whose behalf Plaintiff brings suit.

32.     The Trust consigned the Painting for auction to Bonhams & Butterfields Auctioneers Corp. whose headquarters is in New York City.

<u>The Belated Claim</u>

33.     The Art Loss Register ("ALR") was founded in 1990 to publicize stolen artwork and assist in its recovery.  Within the last few years, in any event on information and belief

well after 1996 when Plaintiff sold the Painting to Mr. Bjurman, one or more of the heirs of Charles and Lindley Eberstadt registered the Unreturned Paintings with the ALR as stolen.

34.     On October 16, 2022, Antonia Kimbell of the ALR sent a letter to Bonham's (the "Kimbell Letter") notifying it of the Defendants' claim to the Painting and enclosing a copy of the purported ADAA notice from November 6, 1974.  The Kimbell Letter asked Bonham's not to withdraw the Painting from a planned auction but to pass the Kimbell Letter onto the Painting's consignor.

35.     Bonham's informed the Trust of the Defendants' claim, which in turn informed the Plaintiff of the same and that it would consider rescinding its purchase of the Painting if the claim could not be promptly resolved.

36.     The Trust responded to Ms. Kimbell at the ALR requesting documentation supporting the Defendants' claim, which has not been forthcoming.

37.     In December 2022, Plaintiff's general counsel wrote to both counsel for the Trust and to Ms. Kimball at the ALR explaining why the Defendants' claims were meritless and untimely.

38.     By letter dated March 31, 2023, the Defendants' New York counsel sent a letter to Bonham's in New York demanding that it deliver the Painting to Defendants and threatening legal proceedings, erroneously stating that the ALR "reported the [Painting] as stolen in 1974."

39.     In light of the Defendants' counsel's threat of litigation on March 31, 2023, the Trust has demanded that the Plaintiff seek judicial affirmation of its rights to the Painting.

<u>The Passage of Time and Prejudice to the Gallery Bars Defendants' Claim to the Painting</u>

40.    Defendants' claim of title to the Painting is barred by the doctrine of laches because they have harmed the Trust and Plaintiff by interfering with the Trust's rightful possession, and by unreasonably delaying their claim they have prejudiced Plaintiff.

41.    No one reported the Painting as stolen to police, the FBI or INTERPOL.

42.    The New Mexico Gallery purchased the work at auction and Mr. Bjurman purchased the Painting from it without either of them ever seeing the ADAA notice, nor would it have been practice in the art market to seek said notices out.

43.    Upon information and belief, the Defendants did not avail themselves of the IFAR alerts or any other platform to publicize their loss, except for the recent registration with the ALR.

44.    If the true owner of the Painting from 1964-1974 was Eberhardt & Sons and its demands for return of the Painting from Shar-Sisto were wrongfully denied, then the statute of limitations on Eberhardt & Sons' claim began to run at that time—and Defendants today stand in those shoes.

45.    If the true owner of the Painting from 1964-1974 was Eberhardt & Sons and it entrusted it to Shar-Sisto, an art merchant which allegedly wrongfully sold it, then any purchaser of the Painting from Shar-Sisto acting in good faith acquired good title thereto under UCC § 2-403—and every downstream purchaser, including the Plaintiff today, stands in those shoes.

46.    The New Mexico Gallery purchased the Painting at a public auction at the Texas Art Gallery in Dallas nearly three decades ago in good faith for value and re-sold it to Mr. Bjurman in 1996 in New Mexico.

47.     The Painting, and ownership of it, was widely and publicly exhibited throughout 1995.

48.     Defendants and their predecessors in interest unreasonably delayed in asserting a claim of title to the Painting until now.

49.     Moreover, the Defendants' delay unfairly prejudices the ability of the Trust (and hence the Plaintiff) to defend itself.

50.     The alleged theft took place over fifty years ago.  Eberstadt & Sons was dissolved one year after the theft was reported, its partners have long since passed away, and according to the University of Oklahoma Press, which published Michael Vinson's book *Edward Eberstadt and Sons* in 2016, "the firm's business records have not survived."

51.     Shar-Sisto no longer exists as an independent company and its principals in the 1960s and 1970 died long ago.

52.     The Texas Art Gallery closed in 2009 when its owner William Burford died. Andy Bjurman, to whom Plaintiff sold the work, died in 2022.

53.     There is simply no surviving evidence or witness to answer the following questions essential for the Gallery's defense:  Did Shar-Sisto steal the Painting (and the other Unreturned Works) or did someone steal the Painting from Shar-Sisto, as Defendants now allege without any evidence?  If so, then why did Shar-Sisto not report the theft to authorities or sue Shar-Sisto for conversion, and why do they even now claim that Unreturned Works were "sold off."

54.      Was the Painting not stolen at all but "sold off" by Shar-Sisto to a good faith purchaser with the consent of the Eberstadts in connection with Shar-Sisto's services, an arrangement common in the trade, which was simply forgotten or unrecorded as Eberstadt & Sons closed its doors?  Did Shar-Sisto enforce a lien against the Painting for Eberhardt & Sons' failure

to pay a large invoice for its repair, re-lining and restoration work on the large collection?  Did Eberhardt & Sons agree to pay Shar-Sisto for its work on the collection by transferring ownership of one or more of the paintings from the collection?   If so, the statute of limitations ran long ago.

CLAIM FOR RELIEF
(Declaratory Judgment – Quiet Title)

55.     Plaintiff repeats and re-alleges each and every allegation in paragraph 1 through 54 as if fully set forth herein.

56.     This case involves an actual controversy over title to the Painting.

57.     Plaintiff is entitled to a declaratory judgement that the Defendants' claims are barred by the equitable doctrine of laches because the Defendants unreasonably delayed in asserting their claim and the Gallery is prejudiced by that delay.

58.     Plaintiff is entitled to a declaratory judgement that the Defendants' claims are barred by the statute of limitations.

59.     Plaintiff is entitled to a declaratory judgement that the Defendants' claim is invalid because they are not proper claimants to the Painting.

60.     Plaintiff is entitled to a declaratory judgement that the Defendants have no valid claim to the Painting.

PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.     Grant Plaintiff the declaratory judgement to quiet title in it to the Painting; and

2.     Grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 17, 2023

                    ROTTENBERG LIPMAN RICH, P.C.

                By:    /s/Christopher Robinson
                     Christopher J. Robinson, Esq.
                     Jennifer A. Kreder, Esq.
                 The Helmsley Building
                 230 Park Avenue, 18th Floor
                 New York, New York 10169
                 (212) 661-3080
                 crobinson@rlrpclaw.com
                 jkreder@rlrpclaw.com

                 *Attorneys for Plaintiff*
                 *Peters Gallery of New York, Inc.,*
                 *d/b/a Gerald Peters Gallery*